# 19-3570

---

## United States Court of Appeals for the Second Circuit

---

On Appeal from the United States District Court For the EASTERN
DISTRICT OF NEW YORK

# APPELLANT'S PETITION FOR PANEL REHEARING OR REHEARING EN BANC

ODED GREENBERG MD,
*Plaintiff-Appellant*,
*V.*

STATE UNIVERSITY HOSPITAL – DOWNSTATE MEDICAL CENTER, a/k/a The State University of
New York Health Science Center at Brooklyn, a/k/a State University of New York Downstate
Medical Center, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, KINGS COUNTY
HOSPITAL CENTER, DEBORAH L. REEDE, STEVEN PULITZER,

*Defendants-Appellees*

---

Plaintiff-Appellant Oded Greenberg MD Proceeding Pro Se

| For Defendants-Appellees State University Hospital Downstate Medical Center, Deborah Reed and Steven Pulitzer | MIT R. VORA, Assistant Solicitor General D. Underwood, Solicitor General, Anisha S. Dasgupta, Deputy Solicitor General, *on brief for* Letitia James, Attorney General of the City of New York |

## TABLE OF CONTENTS

INTRODUCTION ................................................................ 1-2

PROCEDURAL HISTORY AND BACKGROUND ...................................... 3-4

REASONS FOR EN BANC REVIEW/PANEL REHEARING ............ 4

FMLA INTERFERENCE ......................................................... 5-10

FMLA RETALIATION ......................................................... 10-12

DEVELOPING JOB CRITERIA IN BAD FAITH ............................. 12-14

CONCLUSIONS ................................................................ 14-15

TABLE OF AUTHORITIES ................................................. iii-v

## INTRODUCTION

My name is Oded Greenberg, MD and in my first legal brief I hope to bring clarity to 6 years of litigation documents, the sum of which sufficiently muddied the waters of truth and law. Consequently, I find myself on the cusp of having my claims dismissed as meritless before my court of last resort. Though the bar is high particularly in the 2nd circuit, I hope to at least expose the false 'narrative' created to mar my successful career.

Seeing my disabled son's behavior deteriorate before my eyes, I recognize that Defendant's fraudulence has robbed me of resources better used to provide for my son. If this ordeal initiated by an effort to seek leave for his care ends with the knowledge and restored finances to rescue him, it would have been worth it.

**Upholding Rules of Civil Procedure**

Framing my case, I call this Courts attention to misuse of Summary Judgment[1] which has been called a 'drastic remedy' [2] particularly in employment discrimination cases. This deprivation of one's Seventh Amendment Right is overdue for examination. 70% of such cases are dismissed and still my particular facts remain worthy of proper discretion, an opportunity missed at the trial and appellate levels. Limitations here preclude a full discussion, yet it is clear there exists a complete deviation from the rules of civil procedure. I will touch upon this later.

**History**

I am a 61-year-old Radiologist, married and father to three sons, my oldest having a severe disability impacting many aspects of his life. This is particularly worrisome for a young black boy in America making my responsibilities ever more important. The demands of parenting a

special needs child are extraordinary, placing such parents at risk for lost employment trying to balance family responsibilities while remaining employed. [3]

My career with Defendants spanned 30 years, starting in 1981 as a medical student and continued through residencies and board certifications in Pathology and Radiology. Following a fellowship in Body Imaging. I advanced as a respected ER Attending Radiologist and ultimately held the prestigious position, Director of Emergency Radiology.

Defendants hoped to redefine my 30-year successful career by misrepresenting issues **they created** at the end of my tenure. For three decades I was considered a respected radiologist, reliable colleague, and esteemed teacher. All of that changed soon after the arrival of Defendant Reede.

With space constraints here within, I will strive to undue the Defendants false 'narrative'. It is a gross distortion of my career with 'massaged' facts and misrepresentations created to hide a manufactured termination, violating civil and family leave rights. Their disturbing account can be distilled down to this: **at no point in my 30-year career was I involved in any disciplinary process *until* I requested leave to care for my disabled son on 9/2/2014.**

At deposition, Reede and Pulitzer both confessed that never once did I meet with them in any disciplinary capacity. This admission under oath boldly contradicted the intimidating language utilized in the September 8, 2014 Settlement Agreement which falsely characterized then recent meetings as punitive.

Such incongruency repeats throughout the defendant's presentation. Until now, the defendant's deception, not the truth has prevailed. This court is the final opportunity to expose their actions

to both circumvent the law then later contort evidence undoubtedly proving pretext[4]. (Dkt95-10 at7pp7&9, Dkt95-5 at 14p319)

## PROCEDURAL HISTORY AND BACKGROUND

My causes of action include violations of the FMLA, Title VII, Sections 1981 and 1983 of Title 42 of the United States Code, NYSHRL, and NYCHRL.

The Court dismissed the following pursuant to the 11th Amendment: My § 1983 claim for damages, NYSHRL, and NYCHRL claims, but disagreed with respect to the FMLA. I was not barred by sovereign immunity from asserting FMLA interference and retaliation (family-care) claims against all SUNY-Defendants; § 1981 claims against all SUNY-Defendants; and § 1983, NYSHRL, and NYCHRL damages claims against SUNY-Employees in their individual capacities, and § 1983 claims for prospective injunctive relief against SUNY-employees in their official capacities. My ability to assert claims under Title VII was not challenged. Defendants summary judgment motion on these claims was denied.

The Court found evidence presenting a genuine dispute as to material facts in regard to whether SUNY-Employees are subject to individual liability under the FMLA, denying summary judgment.

The Court determined that my FMLA interference claims were retaliation claims wrongly asserting that I did not state that I was ever prevented from taking FMLA leave. (Dkt103 at34¶5, Dkt103 at11¶1)

The Court concluded that I did not exercise protected FMLA rights when I took leave on 9/4/14, claiming I missed work due to a back injury. At deposition I explained legitimate reasons for

reframing my leave around that injury. (Dkt87-55 at13, Dkt95-1 at247) However the Court rejected this, judging my credibility while citing *Jeffreys v. City of New York*, (2d Cir. 2005).

The Court decided that the FMLA retaliation claim also failed as Defendants had legitimate reasons for my termination including a second instance of 'unauthorized leave'.

The Court dismissed Failure to Promote claims asserting that I was not 'similarly situated' to the qualifying candidate and therefore could not establish a prima facie case.

Defendants' motions for summary judgment were granted in their entirety.

I appealed the decision to this Court which dismissed my claims for essentially the same reasons.

<u>REASONS FOR EN BANC REVIEW</u>

1. *EN BANC* REVIEW IS NEEDED TO MAINTAIN CONFORMITY OF DISTRICT COURT DECISIONS DEFINING FMLA INTERFERENCE

2. *EN BANC* REVIEW IS NECESSARY TO CONFORM WITH A RECENT 2ND CIRCUIT OPINION SETTLING THE 'MOTIVATING FACTOR' CAUSATION STANDARD FOR FMLA RETALIATION

3. *ENBANC* REVIEW IS NECESSARY TO FORMALLY ADDRESS EMPLOYERS DEVELOPING JOB CRITERIA IN BAD FAITH

## I. FMLA INTERFERENCE

FMLA interference is fairly read as 'an employer may not impede use of qualifying FMLA leave and they may not materially alter your employment with regards to that leave'.

As defined above, Defendants unequivocally interfered with **FMLA 'benefits'** by **denying/discouraging leave, replacing** protected FMLA leave with unprotected sick leave and **failing to provide notice**. Additionally, they **failed to reinstate me to an equivalent position** based on the terms of a 'Settlement Agreement' I was forced to sign to prevent my termination for 'unauthorized' leave.

In attesting that **I was not denied a benefit** as I was provided paid sick leave for those leave days, the Court misunderstood that the failure to reinstate me to an equivalent position not only represents a badge of interference and retaliation but defines **the benefit denied.**

It is a genuine issue of material fact that the 'Settlement Agreement' materially altered the conditions of my employment demonstrating that my leave days were not protected. (Dkt87-29 at2-3)

In contradistinction**, no benefits were denied** in *Blodgett v 22 S. St. Operations, LLC* [2d Cir, Sep. 15, 2020]. Blodgett's *disciplinary process* began **before** she requested leave, had no relation to it and that disciplinary process resulted in her termination when she returned. Blodgett **was not denied a benefit** since discipline was unconnected to her leave, in contradistinction to my case. I will expand on that below.

Facts supporting FMLA interference were ignored despite well settled intracircuit as well as intercircuit caselaw. It is without question that panel rehearing or *en banc* review is necessary to

secure and maintain uniformity of this circuits decisions and deciding questions of exceptional importance conflicting with other appellate decisions.

**Discouragement**

The panel decision conflicts with a decision of the 2nd Circuit in *Potenza v City of New York*, [2d Cir 2004] ("interfering with exercise of an employee's rights include, … not only refusing to authorize FMLA leave, but ***discouraging*** … such leave"), 29 C.F.R. § 825.220(b).

It also conflicts with the authoritative decisions of multiple Appellate Courts. *Arban v West Pub. Corp.*, [6th Cir 2003], the Sixth Circuit noted that under 29 C.F.R. § 825.220(b), ("interfering with' the exercise of an employee's right under the FMLA includes `*discouraging* an employee from using [FMLA] leave.")

Congress passed the FMLA Leave Act understanding that "it is important for the development of children and the family unit that fathers, and mothers be able to participate in early childrearing … lack of employment policies to accommodate working parents can force individuals to choose between "**job security and parenting**".

It is thus understood that the FMLA provides the **benefit of job protected leave** for parents so that they are **not forced to choose between job security and parenting**. (Dkt87-57 at23)

It is undisputed that Defendants both denied *and* **discouraged** attempts to exercise rights under the FMLA prejudicing my decision making with regards to that leave. (Dkt 87-25 at2, Dkt 95-26 at2) Not only were my leave requests denied by Defendant Pulitzer, but they were **discouraged** by disciplinary threats. (Dkt18p6:32) Defendants' interference resulted in the loss of **the benefit of job protections** as I was punished for taking leave on 9/4 and 9/5.

It is remarkable that the District Court conceded that I followed Defendant Reede's procedure for 'emergency family leave' yet failed to consider pretext in Defendants motivation for denying that leave given the regulations providing for it.. (Dkt103 at37, f.n.19, Dkt87-22 at10). In support, emails to Dr. Reedes timekeeper and personal secretary, requested 'emergency family leave' as noted in her submitted time sheets for those days. (Dkt95-68 at2, Dkt81-7 at10)

Like myself, a similarly situated employee of ordinary resolve would be dissuaded from exercising their rights while under threat of a discipline and potential termination.

Whether Defendants **discouraged FMLA qualifying leave** thus **interfering** with FMLA entitlements is a genuine material issue of fact that should have precluded summary judgment. (Dkt92 at43:23, Dkt95-5 at22pp.358-361)

**Substitution**

The panel decision conflicts with *Coutard v Mun. Credit Union*, [2d Cir 2017] 29 C.F.R. § 825.300 ("Failure to follow the notice requirements … may constitute an interference ….") under (d)(1) if the employer requires paid leave to be *substituted* for unpaid FMLA leave, the **employer must inform** the employee").

The decision conflicts with authoritative decisions of multiple Appellate Courts. *Xin Liu v Amway Corp.*, [9th Cir 2003] ("Liu argues that Amway denied her right to FMLA leave by mischaracterizing her FMLA protected leave as personal leave. The district court erred. Under DOL regulations, **the mischaracterization of Liu's FMLA leave as personal leave qualifies as "interference" with her leave")**. **Similarly**, *Strickland v Water Works and Sewer Bd* [11th Cir 2001] ("The district court misinterpreted the FMLA as permitting employers … to choose whether an employee's FMLA-qualifying absence will be either unpaid but protected or paid but

unprotected. Otherwise, when an employee misses work for an illness that qualifies under both … employer could elect to have the absence count as paid sick leave … free to discharge him without running afoul of the Act").

The District Court stated **no benefit was denied** when Defendants initially categorized FMLA qualifying leave as 'unauthorized leave', transformed it to sick leave, and then asserted its equivalence to FMLA leave. In support, the Courts quote **§ 825.207 "…the employer may require the employee to** *substitute* **accrued paid leave for unpaid FMLA leave'** implying that the leave I was denied, **unpaid FMLA leave**, could be *replaced* by **accrued paid leave**. (Dkt103 at 36 f.n.)

It is well settled throughout this circuit and beyond that *substitute* does not mean *replace,* as leaves must *run concurrently* preserving FMLA 'benefits. Notably, once designated as FMLA leave neither the employee nor the employer may change that designation according to the DOL. [5]

Defendants wish us to forget that they initially branded the leave 'unauthorized', then dressed it up as 'sick leave', and now stretch reason and logic by claiming it as a 'benefit'. That they undeniably disciplined me for that 'benefit' in the form of a Draconian 'Settlement Agreement' proves that it was only a 'benefit' to them.

Time sheets submitted to Labor Relations by Dr. Reedes office deducted 9/4 and 9/5 leave days from my FMLA entitlements affirming FMLA leave. (Dkt95-68 at2, Dkt81-7at10). Their covert attempt to substitute protected FMLA leave for unprotected sick leave is highly suspicious for pretext. Despite calling attention to these documents, I was shocked that the District Court failed to see their import in supporting the very definition of pretext.

The 'Settlement Agreement' degraded my status from a **contracted professional** under the CBA to **'at will' employee**, eviscerating the CBA's 'just cause' provisions. (Dkt87-29 at2-3)

Whether this unlawful substitution interfered with FMLA entitlements represents a genuine issue of material fact precluding summary judgment.

**Notifications**

The panel decision conflicts with a decision of the 2ⁿᵈ Circuit in *Coutard v Mun. Credit Union*, [2d Cir 2017 29 C.F.R. §§ 825.300 ("When an employee requests FMLA leave … the employer **must notify** the employee of [their] eligibility **within five business days...***")§ 825.300(e) ("Failure to follow the notice requirements set forth in this section may constitute an interference with … FMLA rights.").

The proceeding also involves a question of exceptional importance, conflicting with other authoritative decisions.  See *Conoshenti. v Public Service Elec. Gas*, [3d Cir 2004] ("…employer's failure to provide notice of FMLA is actionable if employee can "establish that this failure to advise rendered him unable to exercise [those rights] in a meaningful way ...")

Defendants failure prejudiced my decision-making ability to exercise rights in a meaningful way.  As a result of repeated denials and threats of discipline, my courage to take 'unauthorized leave' was eroded.  An incapacitating back injury on 9/4 provided an opportunity to recharacterize my leave as undeniably 'authorized' to avoid discipline.

The District Court engaged in prohibited credibility determinations, disbelieving my explanation and equating it with *Jeffreys* recantation, the act of a criminal lying to avoid imprisonment. [6]

Further, the Court ignored obvious temporal proximity, when the promised discipline for 'unauthorized leave' was meted out just 5 days later. The Supreme Court[7] held that remarkably close temporal proximity alone could be sufficient evidence for a prima facie causal connection [8]

Labor Relations (Dkt95-30 at3p32, FMLA admin.) also failed to recognize an obvious FMLA leave request or to provide required notifications. (Dkt103 at¶3, Dkt87-24 at12, Dkt87-28 at3) 29 C.F.R. § 825.115(e)(2). Prejudiced by threats of termination, I was coerced into signing a 'Settlement Agreement'. (Dkt87-29 at 2-3)

The lack of notifications interfering with FMLA entitlements is a genuine issue of material fact that should have precluded summary judgment.

## II. **FMLA RETALIATION**

The panel decision conflicts with *Woods v Start Treatment & Recovery Ctrs., Inc.*, [2d Cir 2017] ("We hold that FMLA retaliation claims of the sort Woods brings in this case are grounded in 29 U.S.C. § 2615(a)(1) and a "**motivating factor" causation standard applies to those claims**"). Here, the District Court erred in using the **'but for'** standard. (Dkt103at48¶2)

The proceeding is a question of exceptional importance conflicting with *Egan v Del. River Port Auth.*, [3d Cir 2017] (Reaffirming the mixed-motive framework in FMLA retaliation).

Affirming that my termination was undisputedly due to 'violations of the Settlement Agreement', Defendants undisputedly tied my FMLA leave to the termination decision. (Dkt92 at30:55, Dkt87-62 at 3pp9-10 and at 2 p6, Dkt77 at16, Dkt87-44 at2, Dkt87-48 at2). This undisputed fact confirms that my original denied leave request was not only a **motivating factor** but is in fact the **'but for' factor** for my termination.

A second episode of 'unauthorized leave' was also undisputedly a factor in my termination, the details of which comport with FMLA qualifying leave. Here I asked for two hours to further attend to my son's care. (Dkt103 at14¶2, Dkt87-30 at29, Dkt87-43 at15). It is a genuine material fact whether a second denied FMLA leave request directly '**motivated**' my termination.

The District court erred in using a 'but for' causation standard failing to consider unmistakable '**motivating factors**' for the termination decision. (Dkt103 at48¶2) See *Mathew v N. Shore Long Island Jewish Health Sys., Inc.*, [2d Cir 2014] ("Mathew must show that the Appellees "considered his FMLA leave … a negative factor in [their] decision to terminate him.")

To the extent that the Appellate panel believes that a reasonable factfinder could find that Defendants terminated my employment solely because of the attestation incident, the facts above dispel that notion. (Dkt95-5 at 27 pp 426-29, Dkt103 at 17¶3, Dkt103 at 40¶1)

It is undisputed that an FMLA qualifying leave request directly resulted in a 'Settlement Agreement' the violation of which, Defendants unquestionably relied upon for my termination. It is hard to fathom how undisputed evidence tying FMLA qualifying leave to my termination failed to prevent summary judgment for retaliation.

Supporting Defendants 'legitimate business reasons', the panel stated, "***the record*** overwhelmingly reflects that Dr. Greenberg's conduct was flagrant." (p.4 Summary Motion) This misrepresents that record as there is **no direct evidence** that anyone recommended convening a medical board meeting. The impeachable information came entirely from Defendant Pulitzer's disputed narrative without supportive proof. Weighing of disputed evidence provided by **interested witnesses** is clearly a jury function.

In sum, given the mixed motive analysis above, Defendants have the burden to prove that they would have discharged me regardless of having taken FMLA leave.[9] They have not provided proof of that.

That I was the subject of FMLA Retaliation under the 'motivating factor' standard is therefore a genuine issue of material fact that should have precluded summary judgment.

## III. DEVELOPING JOB CRITERIA IN BAD FAITH

The panel decision conflicts with a decision of the 2nd Circuit in *Zahorik v Cornell University*, [2d Cir 1984] ("[d]epartures from procedural regularity … can raise a question as to the good faith of the process where the departure may reasonably affect the decision").

The proceeding is a question of exceptional importance as it also conflicts with the authoritative decisions of multiple Appellate Courts such as *Danville v. Reg'l Lab Corp*, (10th Cir. 2002). ("While it is the employer's understanding of an employee's qualifications that counts," a "reasonable inference that [the successful candidate's] qualifications were unreasonably inflated . . . while plaintiffs were unreasonably denigrated," can be relevant to a pretext inquiry"). (Dkt 103 at 51 f.n.26 and Dkt 87-65 at 3p.72)

The District Court failed to consider the pretextual nature of Defendant Reede's actions which should have precluded summary judgment.

It is undisputed that the position was not advertised, nor criteria posted as required by the extant CBA. (Dkt92 at 35:7, Dkt81-6 at 103 ¶¶3&10) Defendants misrepresented that Dr. Scott was hired in July (Dkt 95-10 at 4pp. 118-20 and Dkt 103 at 9¶2) after Dr. Areman was terminated, when discovery documents proved that Dr. Scott began credentialling at Kings

County Hospital on 5/13/2014 six weeks before the position became available. (Discovery Dkts. HHC 1758, 1762 and 1770) Their misrepresentation is highly suggestive of pretext in hiding prohibited behavior.

Also, the District Court noted that Defendants failed to provide the resume supposedly available to Defendants at the time of Dr. Scotts promotion in May, yet the Court believed qualifications provided in a later resume supported validity of the absent resume. (Dkt 103 at 51) The District Court failed to adduce that by failing to produce the document, Defendants did not **prove to the Court** that they were aware of Dr. Scotts qualifications at the time of promotion. [10]

It is well settled that the lack of a job posting, and criteria precludes an analysis of qualifications and gives the air of post hoc rationalization when months after the Dr. Scotts preselection, Defendant Reede implied that she was hired for her academic achievements. *EEOC v. Sears Roebuck*, (4th Cir. 2001) is informative ("… an employer asked to justify its actions after the fact has an incentive to claim that the "real" criteria (Dkt103 at55¶2, Dkt 103 at49) were those on which the chosen employee happens to perform best relative to the plaintiff. When an employer picks … qualifications [claiming they were] decisive without regard to the others, the jury is certainly permitted to conclude … that this may have been done as a post hoc justification of a decision made on other grounds"). It is undisputed that but for the sham criteria[11], I was far more qualified for the position and discrimination more likely than not occurred as to protected characteristics, after all Dr. Scott was 20 years younger with far less experience and education.

Defendants inexplicable deviation from established policies supports pretext that should have precluded summary judgment. [12] The Appellate court should consider panel rehearing or *en*

*banc* review to keep the District Courts in conformity with precedent as the above facts support that Defendants developed their criteria in bad faith.

That Defendants developed criteria in bad faith as pretext for prohibited discrimination is a genuine issue of material fact. But for the contrived criteria, the 'similarly situated' argument does not hold water and it would be fair to say that I would be able to establish a prima facie case precluding summary judgment. (Dkt103 at 51, Dkt103 at 49)

<u>CONCLUSIONS</u>

I understand the high bar I must overcome petitioning for *en banc* review or panel rehearing in the 2nd Circuit but am comforted knowing that my words will be heard by the respected Judges of this court. I am aware that this court hesitates to sit in judgment of their colleagues and that is understandable but if we cannot require an adherence to established judicial standards what is their value?

Morbidity and Mortality Rounds are the medical equivalent, where physicians are tasked with presenting patients whose treatments failed, causing harm and sometimes death. This they do in front of their peers, as stressful and embarrassing as that might be, because they have a duty to their future patients to have learned from their mistakes.

Similarly, the Appellate Court should hold the District Court and their colleagues accountable when they stray from established precedent. This is particularly so with regards to the District Court. The Court failed to follow rules of civil procedure by treating issues in a piecemeal[13] fashion, weighing evidence and judging my credibility. The court also muted material facts favorable to me while amplifying those favorable to Defendants. The Court failed to see

Defendants actions as obviously guided by pretext and deliberately intended to hide ulterior motives from the preselection of Dr. Scott to the denial of legitimate FMLA leave.

We must be aware, particularly in these unique and perilous times, that failure to learn from these actions may continue the use of its precedence to the detriment of employees simply trying to balance their responsibilities towards work and family.

The pandemic has highlighted these vulnerabilities, accentuated by a broken healthcare model and our failure to meet the needs of African Americans, employees, families, parents, and children. It is also now abundantly clear that amongst developed nations we are woefully behind in supporting the family care needs of our employees.

The Court should seek to prevent a similar outcome for parents of disabled children who are now at a severe deficit and cannot afford to lose their jobs while seeking care for their children. For me, the perverse result of seeking two days leave has resulted in the inability to find a job as an ER Radiologist during a pandemic while the resultant destruction of my finances has further mitigated my ability to properly care for my disabled son.

The task before this court is to attempt to stem the tide of employment discrimination cases that are sure to come as employees attempt to maintain their ever more precious employment while tending to their families and potential illness. The adjudication of this case should give you pause as employees and their families need your support more than ever before.

# TABLE OF AUTHORITIES

1. [1] Hon. Denny Chin, *Summary Judgment in Employment Discrimination Cases: A Judge's Perspective*.t
2. [2] Schwarzer, Hirsch & B arrans, The Analysis and Decision of Summary Judgment Motions i
3. [3] Journal of Vocational Rehabilitation (2009) 153–175 Family caregiving and employment among parents of children with disabilities 9
4. [4] *Haddad v Wal-Mart Stores, Inc.*, 455 Mass 91 [Mass 2009]
5. [5] https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2019_09_10_3A_FMLA.pdf[5]
6. [6] *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998)
7. [7] *Clark County School District v. Breeden*f
8. [8] *Zann Kwan v. Andalez Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013)3
9. [9] *Throneberry v McGehee Desha County Hosp., Page 973*, 403 F3d 972, 980 [8th Cir 2005]7
10. [10] *Perkins v Brigham Women's Hosp*, 78 F3d 747, 751 [1st Cir 1996] 2
11. [11] *Brown v Gaston County Dyeing Machine Company*, 457 F2d 1377, 1383 [4th Cir 1972)
12. [12] *Kouvchinov v Parametric Tech*, 537 F3d 62, 68 [1st Cir 2008]
13. [13] *Davis-Garett v Urban Outfitters, Inc.*, 921 F3d 30, 45 [2d Cir 2019] (quoting *Reeves v. Sanderson Plumbing Products, Inc.*
14. *Sista v CDC Ixis North America, Inc.*, 445 F3d 161 [2d Cir 2006]
15. *Ross v Gilhuly*, 755 F3d 185 [3d Cir 2014]
16. *Sanders v City of Newport*, 657 F3d 772 [9th Cir 2011]
17. *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001)
18. *Blackett v Whole Foods Mkt. Grp., Inc.* [D Conn, Mar. 27, 2017]
19. *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016)
20. *Potenza v City of New York*, 365 F3d 165 [2d Cir 2004]
21. *Arban v West Pub. Corp.*, 345 F3d 390 [6th Cir 2003]

22. *Xin Liu v Amway Corp.*, 347 F3d 1125 [9th Cir 2003]

23. *De Oliveira v Cairo-Durham Cent. Sch. Dist.* [NDNY, Sep. 30, 2014]

24. *Reilly v Revlon, Inc.*, 620 F Supp 2d 524 [SDNY 2009]

25. *Zedov v Mr. Bult's Inc.* [ND Ill, Mar. 31, 2020, No. 18-cv-7289]

26. *Farkas v NRA Grp. LLC* [MD Pa, July 26, 2016, CIVIL ACTION

27. *McFadden v Ballard Spahr Andrews*, 611 F3d 1 [DC Cir 2010]

28. *Williams v Shenango, Inc.*, 986 F Supp 309 [WD Pa 1997]

29. *Coutard v Mun. Credit Union*, 848 F3d 102 [2d Cir 2017]

30. *Xin Liu v Amway Corp.*, 347 F3d 1125 [9th Cir 2003]

31. *Strickland v Water Works and Sewer Bd.*, 239 F3d 1199 [11th Cir 2001]

32. *Vlahos v. Schroeffel* 2-CV-0139 (DLI), at **7** (E.D.N.Y. Mar. 6, 2006)

33. *Ragsdale v Wolverine Woldwide, Inc.*, 218 F3d 933 [8th Cir 2000]

34. *Conoshenti v Public Service Elec. Gas*, 364 F3d 135 [3d Cir 2004]

35. *Dighello v Thurston Foods, Inc.* [D Conn, May 9, 2018], Civil Action

36. *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 430 (S.D.N.Y. 2004)

37. *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 182 (D. Conn. 2015)

38. *Woods v Start Treatment & Recovery Ctrs., Inc.*, 864 F3d 158 [2d Cir 2017]

39. *Malin v Hospira, Inc.*, 762 F3d 552 [7th Cir 2014]

40. *Blodgett v 22 S. St. Operations, LLC* [2d Cir, Sep. 15, 2020, No. 19-2396]

41. *Mathew v N. Shore Long Island Jewish Health Sys., Inc.*, [2d Cir 2014]

**STATUTES**

[29 U.S.C. § 2614](#)

[29 U.S.C. § 2614(a)(3)(B)](#)

[29 U.S.C. § 2615(a)(1)](#)

[29 C.F.R. § 825.220(b)](#)

[2 9 C.F.R. § 825.300](#)

[29 U.S.C. § 2615(a)(1)](#)